**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ERMITANIO LEBRON,** | |
| **Plaintiff,** | **Civil Action No. 18-14630 (ES)** |
| v. | **OPINION** |
| **COMMISSIONER OF SOCIAL SECURITY,** | |
| **Defendant.** | |

**SALAS, DISTRICT JUDGE**

Before the Court is plaintiff Ermitanio Lebron's ("Plaintiff") appeal of Administrative Law Judge Richardy Damille's ("ALJ Damille") decision denying Plaintiff's application for disability insurance benefits ("DIB") based on ALJ Damille's determination that Plaintiff was not disabled under the Social Security Act (the "Act"), 42 U.S.C. §§ 1381 *et. seq.* (D.E. No. 1, Compl.). The Court exercises jurisdiction pursuant to 42 U.S.C. § 405(g). The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 9.1(f). For the reasons set forth herein, the Commissioner of Social Security's (the "Commissioner") decision is affirmed.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff is currently 68 years of age. Plaintiff was last employed in a furniture store in 2003. (D.E. 7-10, R., at 8). Plaintiff's responsibilities included "making deliveries and cleaning up around the furniture store." (*Id.*).

On April 10, 2017, Plaintiff filed an application for DIB, asserting he was entitled to such benefits, beginning on November 21, 2003, due to his "asthma, nervousness, and osteoporosis."

(D.E. 7-5, R., at 2-5); (D.E. No. 7-6, R., at 2- 12). Plaintiff received medical treatment several times for alleged mental and physical impairments. (D.E. No. 7-7, R., 2-26). Plaintiff has been prescribed various medications in connection with his medical treatment. (*Id.*).

Plaintiff also alleges suffering from back pain between the relevant dates of November 21, 2003 and December 31, 2007. (D.E. No. 7-10, R., at 11). Plaintiff visits his doctor, at the Newark Community Health Center, approximately once a month. (*Id.*). As part of his treatment, Plaintiff uses pain patches and oral pain medication. (*Id.*). While Plaintiff has been found to have a degenerative disc condition, his medical records reflect no spinal tenderness, 5/5 strength, no weakness, and intact sensation. (*Id.* at 2-3).

On April 10, 2007, Plaintiff filed a claim for DIB alleging disability beginning November 21, 2003, due to asthma, nervousness, depression, and osteoporosis/osteopenia. (D.E. No. 7-5, Administrative Record ("R.") at 2-3); (D.E. No. 7-6, R., at 6); (D.E. No. 1, Compl., at ¶5). The claim was denied on May 17, 2007. (D.E. 7-4, R., at 2–4). On June 24, 2007, Plaintiff filed a request for reconsideration of the May 17, 2007 denial, which was readopted on October 11, 2007. (D.E. No. 7-4, R., at 9–12).

Plaintiff filed a request for a hearing before an ALJ on October 25, 2007 (D.E. No. 7-4, R., 13-14), which was held on May 4, 2009. (D.E. No. 7-4, R., at 13–14; 20–23). The initial ALJ, Richard West ("ALJ West") issued a decision denying Plaintiff's application on May 22, 2009. (D.E. No. 7-3, R., at 4–13). On or about July 14, 2009, Plaintiff sought review from the Appeals Counsel, and provided additional medical records. (D.E. No. 7-4, R., 38–40). The supplemental records reflected treatments received by, and medications prescribed[1] to, Plaintiff at Trinitas

---

[1] Plaintiff asserts that one of the medications prescribed to him in connection with his treatment at Trinitis Hospital, known as Invega, "appeared to have been started back on July 11, 2007 according to those medical records." (D.E. 7-4, R., at 39).

2

Hospital's Department of Psychiatry as well as the Newark Community Health Center during 2008 and 2009. (*Id.* at 39–40).

On September 16, 2009, the Appeals Council vacated ALJ West's May 22, 2009 decision and remanded the matter for further review. (D.E. No. 7-3, R., at 14–17). Specifically, the Appeals Council directed ALJ West to do the following:

> Further evaluate the claimant's mental impairment in accordance with the special technique described in 20 CFR 404.1520a, documenting application of the technique in the decision by providing specific findings and appropriate rationale for each of the functional areas described [therein].
>
> Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitation[.]
>
> Obtain evidence from a vocational expert to clarify the effect of the assessed limitations and the claimant's occupational base[.] The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy[.] Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its comparison publications, the Selected Characteristics of Occupations[.]

(D.E. No. 7-3, R., at 17).

On May 10, 2011, a second hearing was conducted before ALJ West. (D.E. No. 7-10, R., at 32–48). On June 3, 2011, ALJ West, again, determined that Plaintiff was not disabled and denied Plaintiff's application for DIB. (D.E. No. 1, Compl., at ¶8) (D.E. No. 7-9, R., at 27–38). ALJ West made several determinations in connection with the required five-step analysis, including that 1) Plaintiff has not engaged in substantial gainful activity from November 21, 2003 through December 31, 2007; 2) Plaintiff's asthma and depression were severe but Plaintiff's back pain and osteoporosis/osteopenia were not severe; and 3) that Plaintiff's condition did not meet or

3

medically equal an impairment in Appendix 1 of the Social Security Regulations. (D.E. No. 7-9, R., at 31–33).

As to step four, ALJ West determined that Plaintiff retained a residual functional capacity ("RFC") that did not include any exertional limitations, meaning that Plaintiff was able to perform a full range of work at all exertional levels. (*Id.* at 34). Nonetheless, Plaintiff's RFC limited Plaintiff to understanding, remembering, and carrying out "simple 1-2 step instructions"; only allowing "for occasional verbal instructions with the general public and coworkers"; and requiring Plaintiff "to avoid concentrated exposure to dust, fumes, and similar occupational irritants." (*Id.*). In light of this RFC, ALJ West determined that Plaintiff was unable to perform his past relevant work as a delivery person and sander. (*Id.* at 37). Lastly, at step five, ALJ West determined that Plaintiff was not disabled because he could have performed a number of jobs that "existed in significant numbers in the national economy" during the relevant time period. (*Id.* at 37–38).

Plaintiff again sought review from the Appeals Council, but the request was denied on June 25, 2012. (D.E. No. 7-2, R., at 2–4). Thus, ALJ West's opinion became the Commissioner's final decision for purposes of appeal.

On August 14, 2012, Plaintiff filed an appeal of the Commissioner's decision in the New Jersey District Court, under case number 2:12-cv-5118 (FSH). (D.E. No. 7-9, R., at 14–23). On June 18, 2013, the Honorable Faith S. Hochberg issued an opinion and order, affirming the Commissioner's decision in part, as to the second step determination, and remanding in part, for further analysis in connection with step five analysis.[2] (*Id.*).

Specifically, Judge Hochberg affirmed ALJ West's determination as to step two in as far as "[t]he ALJ's finding that Plaintiff's back pain was a non-severe impairment that did not impair

---

[2] Judge Hochberg's Order dated June 18, 2013, also terminated the District Court action (D.E. 7-9, R., at 13).

4

Plaintiff's exertional abilities is supported by substantial evidence in the record, which the ALJ cites to in his decision." (D.E. No. 7-9, R., at 21). Additionally, in response to Plaintiff's challenge to the ALJ's step five determination, in so far as Plaintiff asserted ALJ West did not properly consider the Plaintiff's age, Judge Hochberg found that "ALJ West erred in his June 3, 2011 decision by incorrectly classifying Plaintiff . . . and disregarding relevant testimony from the vocational expert regarding Plaintiff's ability to find work at age fifty-five without explaining his decision to do so." (*Id.* at 22). Accordingly, Judge Hochberg remanded the matter for consideration and an explanation of "whether or not Plaintiff was unable to find work and therefore disabled as of his fifty-fifth birthday. (*Id.* at 23). On August 28, 2017, the Appeals Council issued an order, which vacated the Commissioner's final decision and remanded the matter to a new ALJ "for further proceedings consistent with the order of the court." (D.E. No. 7-9, R., at 52).

On April 10, 2018, a third hearing was conducted, this time before ALJ Damille. (D.E. No. 7-8, R., at 5). During the hearing, ALJ Damille granted Plaintiff's request for "an amended alleged onset date to the date last insured of December 31, 2007." (*Id.*). On July 5, 2018, ALJ Damille issued a decision denying Plaintiff's application for DIB. (*Id.* at 6). Plaintiff sought review by the Appeals Counsel, but it denied Plaintiff's request for review on September 4, 2018, thereby making ALJ Damille's decision the Commissioner's final decision for purposes of the current appeal. (D.E. No. 1, Compl., at ¶ 8).

Plaintiff filed the instant appeal on October 4, 2018. (D.E. No. 1, Compl.). However, Plaintiff did not file proof of service of the Complaint, as required by Federal Rule of Civil Procedure 4(c)(2)(ii), until February 19, 2019, which was filed in response to the Court's Notice of Call for Dismissal. (*See* D.E. No. 5, Certificate of Service); (D.E. No. 4, Notice of Call for Dismissal). On March 27, 2019, the administrative record was filed. (D.E. No. 7, R.). Plaintiff

5

filed a brief in support of the instant appeal on July 15, 2019. (D.E. No. 13 ("Pl. Mov. Br.")). Defendant filed an opposition brief on October 15, 2019, after having been granted two extensions. (D.E. No. 18 ("Def. Opp. Br.")).

## II. LEGAL STANDARD

### A. Standard of Review

The Court reviews an ALJ's application of the law *de novo* and all factual findings for "substantial evidence." *See* 42 U.S.C. § 405(g); *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). Substantial evidence is more than a "mere scintilla" of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Although substantial evidence requires "more than a mere scintilla, it need not rise to the level of a preponderance." *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). While failure to meet the substantial evidence standard normally warrants remand, such error is harmless where it "would have had no effect on the ALJ's decision." *Perkins v. Barnhart*, 79 F. App'x 512, 515 (3d Cir. 2003).

Courts are bound by the ALJ's findings of fact that are supported by substantial evidence "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Where evidence in the record is susceptible to more than one rational interpretation, [the Court] must accept the Commissioner's conclusions." *Izzo v. Comm'r of Soc. Sec.*, 186 F. App'x 280, 283 (3d Cir. 2006). Thus, this Court is limited in its review because it cannot "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).

### B. Determining Entitlement to Social Security Benefits

To qualify for DIB, the claimant must first establish that he is "disabled." 42 U.S.C. §

1381. A claimant is disabled only if his physical or mental impairments are "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A). A physical or mental impairment is defined by the Act as an "impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42. U.S.C. § 423(d)(3). Under the Act, "a disability is established where the claimant demonstrates that there is some medically determinable basis for an impairment that prevents [the individual] from engaging in any substantial gainful activity for a statutory twelve-month period." *Fargnoli v. Halter,* 247 F.3d 34, 38–39 (3d Cir.2001) (internal citations and quotations omitted).

In analyzing whether a disability exists under the Act a five-step sequential evaluation process is followed. *See* 20 C.F.R. § 416.920. First, the plaintiff must demonstrate that he has not engaged in any substantial gainful activity since the onset date of his severe impairment. 20 C.F.R. §§ 404.1520(a)(4)(i) & 416.920(a)(4)(i). Substantial gainful activity is defined as significant physical or mental activities that are usually done for pay or profit. 20 C.F.R. §§ 404.1572(a) & 416.972(a), (b). If an individual engages in substantial gainful activity, he is not disabled under the regulation, regardless of the severity of his impairment or other factors such as age, education, and work experience. 20 C.F.R. §§ 404.1520(b) & 416.920(b). If the plaintiff demonstrates that he has not engaged in substantial gainful activity, the analysis proceeds to step two.

Second, the plaintiff must demonstrate that his medically determinable impairment or the combination of his impairments is "severe." 20 C.F.R. §§ 404.1520(a)(4)(ii) & 416.920(a)(4)(ii). A "severe" impairment significantly limits a plaintiff's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c) & 416.920(c). An impairment or combination of

impairments does not satisfy this threshold if medical and other evidence only establishes slight abnormalities which have no more than a minimal effect on an individual's ability to work. *See Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003).

Third, the ALJ must assess the medical evidence and determine whether the plaintiff's severe impairment(s) (alone or in combination) meet or equal an impairment listed in the Social Security Regulations' "Listings of Impairments" in 20 C.F.R. § 404, Subpart P, Appendix 1 ("Listing"). *See* 20 C.F.R. §§ 404.1520(a)(4)(iii) & 416.920(a)(4)(iii).

If a plaintiff is not found to be disabled at step three, the analysis continues to step four. However, before reaching step four, the ALJ must first determine a plaintiff's RFC. A plaintiff's RFC is the most that a plaintiff can do despite his limitations; all relevant evidence is considered. 20 C.F.R. § 416.945(a). At step four, the ALJ determines whether the plaintiff's RFC permits him to perform his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv) & 416.920(a)(4)(iv). If the plaintiff lacks the RFC to perform any work he had done in the past, the analysis proceeds to step five.

In the fifth and final step, the burden shifts to the Commissioner to show that there is a significant amount of other work in the national economy that the plaintiff can perform based on his age, education, work experience, and RFC. 20 C.F.R. §§ 404.1520(a)(4)(v) & 416.920(a)(4)(v).

## III. DISCUSSION

### A. ALJ Damille's Final Decision

At step one, ALJ Damille determined that Plaintiff had not engaged in substantial gainful activity from November 21, 2003, through his date last insured of December 31, 2007. (D.E. No. 7-8, R., at 7). At step two, the ALJ concluded that Plaintiff had the following severe impairments:

asthma and depression. (*Id.*).   ALJ Damille concluded that Plaintiff's back pain and osteoporosis/osteopenia was not severe at step two as "the objective medical evidence does not support a finding that [these conditions] more than minimally affects claimant's ability to perform basic work activities[.]" (*Id.* at 8).  At step three, ALJ Damille determined that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of one of the impairments listed in Appendix 1 of the applicable regulations. (*Id.* at 8-10).  The ALJ specifically evaluated 3.02 for chronic respiratory disorders and 3.03 for asthma, as well as paragraph B and C criteria for claimant's asserted mental impairment. (*Id.*).

At step four, the ALJ provided a lengthy analysis, first determining that Plaintiff had the RFC to perform "a full range of work at all exertional levels" but he could perform work that avoided concentrated exposure to fumes, orders, dusts, gases and poor ventilation. (D.E. 7-8, R., at 10).  Plaintiff's RFC further found that Plaintiff "was able to understand, remember and carry out simple 1-2 step instructions; he could only have occasional verbal interaction with the general public and coworkers." (*Id.*).  ALJ Damille ultimately concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (*Id.* at 12).  The ALJ found that Plaintiff could perform his past relevant work as a delivery worker, as supported by the vocational expert's testimony. (*Id.* at 13).

Alternatively, at step five, ALJ Damille determined that Plaintiff was capable of making a successful adjustment to other work that exists in the significant numbers in the national economy, based on the record and the testimony of the vocational expert. (*Id.* at 14).  Accordingly, The ALJ found that Plaintiff was not disabled.  (*Id.*).

9

**B. Plaintiff's Arguments**

    **i. Step Three**

Plaintiff argues that ALJ Damille's step-three analysis is not based on substantial evidence and that he failed to comply with controlling regulations when he failed to consider Plaintiff's impairments in combination with one another in determining medical equivalence. (Pl. Mov. Br. at 27). As to Plaintiff's physical impairments, the ALJ's step-three analysis was as follows:

> The claimant has no impairment which meets the criteria of any of the listed impairments described in Appendix 1 of the Regulations (20 C.F.R., Part 404, Subpart P, Appendix 1). No treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment. I have reviewed all of the evidence and conclude[] that the claimant's impairments, both singly and in combination, do not meet or equal the severity of any listing. In reaching this conclusion, I have also considered the opinion of the Disability Determination Services (DDS) medical consultants who evaluated the issue at the initial and reconsideration levels of the administrative review process and reached the same conclusion.
>
> I considered the listing for chronic respiratory disorders (3.02) and asthma (3.03).
>
> The claimant has asthma, but he has not met the pulmonary function test requirements of listing 3.02 involving "Chronic Pulmonary Insufficiency" and has not had "attacks" (as defined in 3.00C), in spite of prescribed treatment and requiring physician intervention, occurring at least once every 2 months or at least six times a year" as required by listing 3.03. Therefore, I find that the claimant does not meet or equal Listings 3.02 or 3.03.

(D.E. No. 7-8, R., at 8). Plaintiff contends that ALJ Damille's decision failed to consider his severe impairments in combination, as required. (Pl. Mov. Br. at 26–28).

Assuming that Plaintiff is correct and that ALJ Damille should have performed a more in-depth analysis at the third step, Plaintiff fails to show how the outcome would have been different. "Ordinary harmless error review . . . is applicable to administrative appeals." *Holloman v. Comm'r Soc. Sec.*, 639 F. App'x. 810, 814 (3d Cir. 2016) (citing *Shinseki v. Sanders*, 556 U.S. 396, 409

(2009)).  Where, as here, a plaintiff alleges error by the ALJ, "the burden of showing harmfulness is normally on the party attacking the agency's determination."  *See Shinseki*, 556 U.S. at 398. This means that Plaintiff must explain how he "might have prevailed at step three if the ALJ's analysis have been more thorough."  *Holloman*, 639 F. App'x at 814.  Specifically, Plaintiff must "affirmatively point[] to specific evidence that demonstrates he should succeed at step three." *Woodson v. Comm'r Soc. Sec.*, 661 F. App'x 762, 766 (3d Cir. 2016).

Plaintiff makes clear that he does not challenge ALJ Damille's findings that, neither Plaintiff's asthma nor pulmonary insufficiency were the equivalent to the severity required by 3.02 and 3.03, but he points out that "the mere fact that plaintiff does not suffer listing-level pulmonary problems does not tend to suggest that his severe breathing abnormalities impose no exertional limitation." (Pl. Mov. Br. at 28).  Plaintiff further argues that "an individual who is short of breath and prone to asthma attacks will suffer far less symptoms sitting at a table or desk in a clean workspace than will a worker tasked with delivering furniture.  (*Id.*).  Even if the Court takes this observation as true, by only highlighting a potential error by the ALJ, Plaintiff fails to "point to specific evidence that demonstrates he should succeed at step three." *Woodson v. Comm'r Soc. Sec.*, 661 F. App'x 762, 766 (3d Cir. 2016).  Instead, Plaintiff's argument appear to address the RFC.  Thus, Plaintiff fails to meet his burden and show that the alleged error was not harmless.

With respect to Plaintiff's mental impairments, Plaintiff argues that the ALJ failed to consider the paragraph A criteria of listing 12.04 for depression and instead turned directly to paragraph B criteria.  (Pl. Mov. Br. at 28- 29).  Plaintiff continues that as to the B criteria, the ALJ's decision is deficient in that it "consists of a solitary, conclusory statement." (Pl. Mov. Br. at 29). Plaintiff argues that ALJ Damille failed to sufficiently explain his analysis to permit meaningful review.  (*Id.* at 30).

11

As to Plaintiff's first argument, "the omission of the "paragraph A" analysis does not render the ALJ's decision unreviewable. It is quite plain that the ALJ's decision rested on the absence of both "paragraph B" and "paragraph C" criteria[.]" *Holloman v. Commissioner Social Sec.*, 639 Fed.Appx.810, 814 (3d Cir. 2016). In addition, Plaintiff again fails to demonstrate how he was harmed by the ALJ's review at step-three. Plaintiff fails to explain, based on the evidence of record, how he might have satisfied the criteria in paragraph A and prevailed at step three. *See* 20 C.F.R. § 404.1525(d) ("To meet the requirement of a listing, you must have a medically determinable impairment(s) that satisfies all of the criteria in the listing."); *Williams*, 970 F.2d at 1186 ("In order to qualify for benefits at step three of the sequential evaluation process, a claimant must match or equal a listed impairment."); *see also Rutherford v. Barnhart,* 399 F.3d 546, 553 (3d Cir.2005) (the Court noting that the claimant "has not specified how that factor would affect the five-step analysis undertaken by the ALJ, beyond an assertion that her impairment makes it more difficult for her to stand, walk and manipulate her hands and fingers. That generalized response is not enough to require a remand[.]").

Moreover, the Court disagrees that the ALJ's step-three analysis as to Plaintiff's mental impairments deprived the Court of meaningful review. Based on recited evidence, ALJ Damille noted the inconsistencies of Plaintiff's subjective complaints when compared to treatment progress notes, which showed improvement. (D.E. No. 7-8, R., at 9–10). Specifically, the ALJ noted that "the record indicated the claimant was diagnosed with major depression with psychosis [.] He was noted with anxiety and paranoid feelings that decreased attention and concentration." (D.E. No. 7-8, R., at 9). Nonetheless, after reviewing additional medical records, ALJ Damille noted that progress notes indicated "claimant reported feeling good," "his thought process was clear and coherent, with no psychotic symptoms," and that "cognitive functioning was grossly intact." (*Id*.).

Further, ALJ Damille considered "the opinion of the Disability Determination Services (DDS) medical consultants who evaluated the issue at the initial and reconsideration levels of the administrative review process[.]" (*Id.* at 9). The ALJ ultimately concluded that Plaintiff's mental impairments did not meet the criteria of the listed impairment, individually or in combination. (D.E. No. 7-8, R., at 8). This language reflects ALJ Damille's consideration of impairments in combination as well as individually. An ALJ need not "use particular language or adhere to a particular format in conducting his analysis." *Jones v. Barnhart,* 364 F.3d 501, 505 (3d Cir.2004).

The Court thus finds that, contrary to Plaintiff's argument, ALJ Damille's decision as a whole, reflects "sufficient development of the record and explanation of findings" to allow meaningful review of the step three analysis. *See Burnett*, 220 F.3d at 119; *Jones,* 364 F.3d at 505.

### ii. Step Four

The ALJ concluded that Plaintiff had the RFC to perform

> a full range of work at all exertional levels but he could perform work that avoided concentrated exposure to fumes, orders, dusts, gases and poor ventilation. He was able to understand, remember and carry out simple 1-2 step instructions; he could only have occasional verbal interaction with the general public and coworkers.

(D.E. No. 7-8, R., at 10). Plaintiff asserts that ALJ Damille failed to learn the job duties of a furniture deliverer, which would then have enabled ALJ Damille to properly compare the established medical impairments suffered by Plaintiff with the specific requirements of his past employment. (Pl. Mov. Br. at 31).

A plaintiff's RFC is the most that a plaintiff can do despite his limitations. 20 C.F.R. § 416.945(a). When making an RFC determination, an ALJ is required to consider all evidence. *Burnett*, 220 F.3d at 121. However, an ALJ need not discuss in his opinion "every tidbit of evidence included in the record," *Hur v. Barnhart*, 94 Fed. App'x. 130, 133 (3d Cir. 2004), so long

13

as "the ALJ's decision, read as a whole, illustrates that the ALJ considered the appropriate factors" in reaching his conclusions. *Jones*, 364 F.3d at 505.

Here, with respect to Plaintiff's physical conditions, ALJ Damille first addressed the Plaintiff's subjective Adult Function Report. (D.E. No. 7-8, R., at 10). Plaintiff alleged no issues with personal care other than difficulty caring for his hair. (*Id.*). He also alleged difficulties "lifting, bending, reaching, sitting, kneeling, seeing and getting along with others[;]" his inability to write; numbness in his fingers; pain in the left side of his neck, shoulder, and arm; his inability to get along with authority figures "very well[;]" and the fact that he was sometimes able to handle stress and changes in routine. (*Id.*).

Plaintiff testified that his knee hurt a lot and that he forgets everything. (*Id.* at 11). Plaintiff continued that he reported to his psychiatrist, Dr. Pena, sleep problems, hearing voices, feeling that someone was following him, and being afraid particularly while driving. (*Id.* at 11). The ALJ then considered, *inter alia*, treatment records from Dr. Pena, which showed that Plaintiff's symptoms improved with medication and that later, Plaintiff's cognitive functioning was intact and that his thought process was clear and coherent. (*Id.*).

As for physical impairment of asthma, progress notes from Newark Community Health Center from early 2007 reflected that although Plaintiff was seen for an asthma medication refill, "he denied experiencing shortness of breath or cough." (D.E. No. 7-8, R., at 11). Further, a February 24, 2011 report showed that prior to December 31, 2007, Plaintiff's asthma was controlled with medication. (*Id.*).

In addition to the objective medical evidence, the ALJ also considered the medical opinions listed above and explained the weight he accorded to each. (*Id.* at 26–27); *see Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001) ("Although the ALJ may weigh the credibility of the

14

evidence, he must give some indication of the evidence that he rejects and his reason(s) for discounting that evidence.") (citing *Burnett*, 220 F.3d at 121).  For example, as to the DDS opinions, ALJ Damille only gave the opinions partial weight since the doctors did not personally examine the Plaintiff.  (*Id.*).

In light of the ALJ's review of the evidence, the Court finds that the ALJ's RFC determination as Plaintiff's physical and mental impairments was supported by substantial evidence on the record as whole.  The ALJ sufficiently explained why contradictory evidence undercut Plaintiff's subjective complaints and the ALJ also adequately explained the weight he was giving to opinion evidence.

Lastly, Plaintiff argues that ALJ Damille's determination that Plaintiff's RFC permits him to engage in past relevant work as a furniture deliverer was an error since it goes against the prior ALJ West's determination.  However, ALJ Damille was not bound by ALJ West's decision.  After the District Court remanded the matter back to the Appeals Council, the Appeals Council issued an order, which vacated the Commissioners final decision and remanded the matter to a new ALJ "for further proceedings consistent with the order of the court."  (D.E. No. 7-9, R., at 52).  Further, and importantly, the new ALJ was directed to "take any further action needed to complete the administrative record and issue a new decision."  (*Id.*).  Accordingly, ALJ Damille's lack of reliance on ALJ West's prior findings was not an error and is consistent with the directive from the Appeals Council.  Moreover, even if ALJ Damille's step four finding was in error, the ALJ alternately found that Plaintiff did not prevail at step five.

The Court again notes that it cannot reweigh evidence and does not do so.  *See Williams*, 970 F.2d at 1182; *Morales*, 225 F.3d at 317.  The ALJ provided a sufficient explanation, supported

15

by the record, as to the weight he was attributing to the evidence. The Court thus finds that ALJ Damille's step four analysis was supported by substantial evidence.

### C.     Step Five

Plaintiff raises no challenges to ALJ Damille's step five analysis, and instead focuses solely on the aforementioned two. The Court thus will not go into detail regarding ALJ Damille's conclusions as to step 5, however, the Court does note that during the hearing, ALJ Damille posed several questions to the vocational experts specifically asking for positions available for a similarly situated individual, as ordered by Judge Hochberg in the District Court's first ruling. (D.E. No. 7-9, R., at 13).

### IV.    CONCLUSION

For the foregoing reasons, the Court Affirms the decision of the Commissioner of Social Security. An appropriate Order accompanies this Opinion.

*s/ Esther Salas*_____
**Hon. Esther Salas, U.S.D.J.**